Russell Allen HARLOW, Petitioner,

v.

E. W. MURRAY, Respondent.

Civ. A. No. 76–0049(C).

United States District Court,
W. D. Virginia,
Charlottesville Division.

Jan. 23, 1978.

Professor Stephen A. Saltzburg, Charlottesville, Va., for petitioner.

Asst. Atty. Gen. James E. Kulp, Richmond, Va., for respondent.

## MEMORANDUM OPINION

TURK, Chief Judge.

Petitioner has filed for habeas corpus relief, alleging that he was ineffectively assisted by his counsel at trial and that his pleas of guilty to two murder indictments were not made "voluntarily" and "intelligently". After appointing counsel to assist petitioner, this court conducted a hearing on respondent's motion to dismiss on April 11, 1977. An evidentiary hearing was conducted on August 22, 1977. The case is now before the court for resolution of the issues.

## SUMMARY OF THE FACTS AND HISTORY OF THE CASE

In 1970, the petitioner, Russell Allen Harlow, was indicted for the murder of his wife and sister-in-law. The grand jury returned short form indictments which did not indicate the degree of murder with which Harlow was charged. On March 20, 1970, petitioner plead guilty to the two indictments in the Circuit Court of Fluvanna County. At this proceeding, Harlow was represented by two court appointed attorneys. After receiving the pleas, the trial judge questioned petitioner as to his understanding of their impact.[1] The trial judge then proceeded to hear motions and evidence regarding the murders and the activities of Harlow, including his excessive drinking on the day of the murders. Several witnesses testified and Harlow himself took the stand. The court then found Harlow guilty of first degree murder on both indictments, and discounted his evidence as to intoxication. The judge then ordered a presentence investigation and later conducted a presentence hearing. At the conclusion of the presentence hearing, the judge sentenced Harlow to eighty years on the first indictment and thirty years on the second, the terms to run consecutively. Harlow appealed these convictions to the Virginia Supreme Court on the ground that the convictions of guilty to first degree murder were contrary to the law and evidence. The Virginia Supreme Court denied his appeals, without discussing the merits of the allegations concerning the sufficiency of the evidence.

On March 22, 1971, Harlow petitioned the Virginia Supreme Court for a writ of habeas corpus. He alleged that his guilty pleas were involuntary and that he had received ineffective assistance from his court appointed counsel. In his state petition for habeas relief, Harlow offered the following explanation as to his understanding of the ramifications of his guilty plea:

> Your petitioner was not advised, by either trial counsellor, that murder in Virginia is presumed to be murder in the second degree and that the Commonwealth's Attorney can raise the charge of first degree murder upon the presentation of proper evidence, and that when

---

1. COURT: Now has your attorney explained to you fully what it means to plead guilty in a case of this kind?
 HARLOW: Yes sir.
 COURT: You understand that you are admitting that you committed murder?
 HARLOW: Yes sir.
 COURT: And the penalties that may be imposed?
 HARLOW: Yes sir.
 COURT: All right, you may take your seat. TRANSCRIPT OF TRIAL PROCEEDINGS, MARCH 20, 1970, at 2–3.

one pleads guilty to the charge of murder, he may, depending upon the evidence, be pleading guilty, to murder in the first degree. Neither trial counsellor, of your petitioner's (sic) advised your petitioner that he could be found guilty of murder in the first degree on both counts and receive a maximum of death on each count.

The Supreme Court awarded the writ as to Harlow's contention that the plea was involuntary and dismissed the ineffectiveness contention. The Court ordered the writ returnable for plenary hearing in the Circuit Court of Fluvanna County. At the subsequent plenary hearing, Harlow and his two court appointed attorneys testified. Harlow reasserted his contention that he had not understood that a plea of guilty was presumed to be a plea of guilt to second degree murder and that the Commonwealth could raise the degree upon presentation of evidence of premeditation. Harlow's attorneys testified that they had recommended a plea of guilty to both indictments. Their recommendation was based on the fact that they had been told by the Commonwealth's Attorney that the state would seek a jury trial on a plea of not guilty.[2] Given the heinous circumstances surrounding the offenses charged in the indictments, Harlow's attorneys related that they recommended the avoidance of a jury trial and sentencing through the entry of a guilty plea.[3] In this manner, they hoped to avoid a death sentence. Moreover, at the state habeas hearing, the trial attorneys related that they hoped to present sufficient evidence of Harlow's intoxication so as to negate the proof of premeditation that they felt would be required of the Commonwealth in order to raise the degree of the offense to first degree murder.[4]

Clearly, the trial attorneys believed that, under Virginia law, pleas of guilty to the indictments constituted pleas of guilt to second degree murder. The attorneys related that they had informed their defendant that the Commonwealth could raise the offense to first degree murder through evidence of premeditation.[5] The same understanding of the law seems to have been shared by the presiding judge at the state habeas hearing,[6] and, most likely, by the trial judge as well.[7]

The state habeas judge found that Harlow's pleas were voluntary and that the imposition of penalties for first degree murder was proper. The state habeas judge stated as follows:

That [whether Harlow understood the nature of his pleas] seems to be the principal issue here. There is certainly no evidence of any coercion but there is some

---

2. In Virginia, an accused who pleads not guilty may waive a jury trial only with the concurrence of the Attorney for the Commonwealth and of the court entered of record. Code of Va. § 19.1–192 (1950). Upon a guilty plea, the court hears the case without a jury. *Id.* Under Virginia law at the time of Harlow's conviction, first degree murder was a capital crime. Code of Va. § 18.1–22 (1950). Upon a trial by a jury, the jury renders sentence. Code of Va. § 19.1–291.

3. Harlow's attorneys, both experienced criminal lawyers, testified at the hearing held by this court that the trial judge, to their knowledge, had never imposed the death penalty in a case tried by the court, and had never reduced a jury sentence in a case tried before a jury.

4. *Transcript of Habeas Corpus Hearing*, Circuit Court of Fluvanna County, at 25–40.

5. These statements proved inconsistent with Harlow's contention that he was totally unaware of the potential for second degree murder to be "raised" to first degree murder. Ap-

parently, the state habeas judge considered this discrepancy only to the extent that he concluded that the pleas were in no way coerced.

6. Q. [Harlow's state habeas attorney]: Well, the fact that it was second degree murder in the end doesn't mean very much does it, because when you plead guilty to murder you are pleading guilty to the highest degree isn't that right?

A. [Harlow's trial attorney]: I understand if you're pleading guilty to second degree murder

. . .

COURT: That's all you can plead to under the law . . .

*Transcript of Habeas Corpus Hearing*, Circuit Court of Fluvanna County, at 37.

7. The presentence report received by the trial judge, and accepted by the parties as accurate, stated under "Court Action" that defendant entered a plea of guilty to second degree murder.

evidence that he was either confused or misled or was unaware of the effect—at least there is evidence of it. I don't make any findings as to that at this point. *Transcript of Habeas Corpus Hearing*, Circuit Court of Fluvanna County, at 77.

The judge's opinion was that Harlow's principal objective had been the avoidance of a jury trial, that the plea of guilty was entered in furtherance of this objective, and that the Commonwealth satisfactorily met the burden required to elevate the degree of murder. *Id.*, at 95–96. The judge relied on *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) to support his holding that "where a conviction can stand on the record separately and apart from the plea of guilty", then even if petitioner's pleas were based on a lack of intelligence, the defect was cured by the record and petitioner had given up nothing as to his trial rights.[8] *Id.*, at 96.

Harlow appealed the denial of the writ to the Virginia Supreme Court. The appeal was denied. He then filed a petition for habeas corpus in the United States District Court for the Eastern District of Virginia which was transferred to this court. That petition alleged ineffective assistance of counsel and involuntariness of the guilty pleas. On May 28, 1974, this court ruled that the state court determination was supported by the record. *Harlow v. Superintendent*, Civil Action 74–C–4–C (W.D.Va., 1974) (Dalton, J.). In denying the petition, Judge Dalton commented on Harlow's pretrial strategy as follows:

. . . they believed there was a possibility of interposing a defense of intoxication thereby negating the element of premeditation. Furthermore, they advised the petitioner that even if the prosecution established first degree murder, based

upon the presiding judge's reputation, it was extremely unlikely that he would impose the death sentence. During the plenary hearing, both attorneys concluded that petitioner, aware of the consequences of his action, determined to follow their advice and plead guilty to second degree murder. (Slip Opinion at 3).

Judge Dalton found no fault with the trial attorneys' understanding of Virginia law. An appeal to the United States Court of Appeals for the Fourth Circuit followed. That court dismissed the appeal on May 23, 1975, in a memorandum decision. *Harlow v. Superintendent*, Number 74–1878 (4th Cir., 1975).

## CURRENT STATUS OF THE CASE

On November 15, 1976, Harlow filed a second petition which is currently before this court. The new petition again challenges the voluntariness and intelligence of the plea, in view of certain circumstances brought to light by the intervening decision in *Kibert v. Commonwealth*, 216 Va. 660, 222 S.E.2d 790 (1976). In *Kibert*, the Virginia Supreme Court determined that a plea of guilty is always to the highest degree of the offense charged in the Commonwealth's indictment and that the statutory short form of indictment for murder includes murder of the first degree. Furthermore, the Supreme Court, citing *Hobson v. Youell*, 177 Va. 906, 15 S.E.2d 76 (1941), also noted that such a circumstance had prevailed in the Commonwealth for many years.

This court finds it unnecessary to undertake an extended review of the relevant case law leading to *Kibert*, even though the rule of law evolved in those cases is somewhat less than decisive.[9] The crucial point

---

**8.** The state habeas judge obviously misread *Alford*. The judge relied on the case to support his finding that a plea of guilty, based on a lack of intelligence, could be cured by adequate evidence of guilt in the trial record. However, the issue in *Alford* was whether a guilty plea which waived trial rights but did not confess guilt was valid. The United States Supreme Court held that a judge could look at evidence of guilt offered at a trial in accepting a guilty plea. 400 U.S. at 38, 91 S.Ct. 160. The evidence regard-

ing defendant's guilt in *Alford* was not a substitute for a finding that the plea was intelligently entered, but a substitute for an admission of guilt.

**9.** Even in *Hobson v. Youell, supra*, the Court stated that "[o]n a plea of guilty, the accused and the Commonwealth are entitled to the independent judgment of the court upon the degree of his guilt and the punishment to be inflicted". 15 S.E.2d at 79. The opinion in

is that neither the presiding judge nor defense attorneys in Harlow's state trial understood the ramifications of a plea of guilty to a short form indictment for murder. While the Virginia Supreme Court obviously felt that the rule of law had been well settled for many years, the history of this case suggests otherwise. That history establishes that no less than two Virginia Circuit Court Judges, three experienced trial attorneys, and one U.S. District Judge all considered that the burden was on the Commonwealth to "raise" second degree murder to first degree. There can be no doubt that Harlow's pleas of guilty were based on that understanding of the law. The question advanced by his instant petition is a simple one: can an individual make an intelligent plea when he, his legal advisors, and the judge accepting his plea, do not understand the legal ramifications thereof?

## RESPONDENT'S MOTION TO DISMISS

Respondent argues that petitioner's grounds of an involuntary guilty plea and ineffective assistance of counsel have already been decided by this court and affirmed by the Court of Appeals, and should be dismissed as merely repetitious or, in the alternative, should be reaffirmed. Secondly, respondent argues that the procedure in fact followed by the trial court was to allow the petitioner to plead guilty to the lesser included offense in the short form murder indictment with the understanding that the Commonwealth could undertake to raise the crime to first degree murder by the presentation of evidence of premeditation, even though Virginia case law dictated that petitioner's guilty plea was a plea to first degree murder. The Commonwealth contends that the question of the propriety of this procedure has never been presented to, and decided by, the Virginia courts and therefore petitioner has not exhausted state remedies as to this question.

■ Although Harlow has previously petitioned this Court for a writ of habeas corpus on the identical grounds, this Court

is not precluded from reconsidering his claims. The doctrine of *res judicata* does not apply to applications for habeas corpus. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). That decision sets forth the criteria by which to determine when a court may exercise its discretion to give controlling weight to the denial of previous federal habeas relief. *Sanders, supra* at 15, 83 S.Ct. 1068. The previous federal habeas decision was based on a misconstruction of the actual decision of the state habeas judge and therefore does not preclude the present petition on this same ground. *Brown v. Peyton*, 435 F.2d 1352, 1354 (4th Cir., 1970). Accordingly, this Court has reviewed petitioner's claims and heard the evidence and arguments as to them.

■ Respondent's second theory is that of exhaustion. Federal courts may not issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "unless it appears that the applicant has exhausted the remedies available in the Courts of the State . . ." 28 U.S.C. § 2254(b). In the instant case, it is clear that in the state habeas proceeding, petitioner raised questions regarding his understanding of his plea. In his state habeas petition, Harlow raised issues which specifically concerned the significance of a guilty plea to a short form indictment. The substance of the allegations in the instant petition is not dissimilar from that advanced in the earlier state habeas proceedings. Given such circumstances, the court must determine that all exhaustion requirements have been met. *Sanders v. United States, supra; Daugharty v. Gladden*, 257 F.2d 750 (9th Cir., 1958). Considering the pervasive "misunderstanding" of the import of a plea to a short form indictment, the question of the propriety of a trial finalized under the discredited procedure of "elevation" will undoubtedly reach the Virginia Supreme Court in the future. However, in this case, the primary issue is that of peti-

---

*Hobson* was further weakened by the vigorous dissent of Justice Holt. In *Smyth v. Morrison*, 200 Va. 728, 107 S.E.2d 430 (1959), the Court noted that upon a plea of guilty, "[t]he purpose

of hearing evidence is to determine whether an accused is guilty or not and the measure of his guilt".

tioner's understanding of the consequences of his guilty plea. This question has been fully and fairly presented to the state courts of Virginia.[10] Consequently, the court proceeds to consideration of the question on its merits.

## MERITS OF PETITIONER'S CONTENTIONS

 A guilty plea is an admission of all material facts pleaded in the indictment; a self-supplied conviction; and a waiver by the defendant of several constitutional protections, including the privilege against self-incrimination, the right to trial by jury, and the right of confrontation. *Boykin v. Alabama,* 395 U.S. 238, 242, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1968). It is the most devastating, final and total waiver of rights in the criminal justice system. To be constitutionally valid, a guilty plea, like other waivers, must be voluntary, intelligent and made with an awareness of the relevant circumstances and likely consequences. *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1969).

The record in this case clearly establishes that petitioner was fully advised and counseled by his trial attorneys as to their understanding of the applicable Virginia law. However, their understanding was clouded by the notion that the Commonwealth would have the burden to raise the degree of the offense to first degree murder, through a showing of evidence of premeditation. The confusion was compounded by the trial judge, who could have easily resolved the dilemma by merely asking the petitioner if he [Harlow] understood that upon a plea of guilty, the Commonwealth no longer had the burden to produce evidence of premeditation beyond a reasonable doubt. Instead, the trial judge asked several perfunctory questions designed only to establish general voluntariness and understanding. Given such circumstances, the court must conclude that petitioner's pleas

were not occasioned by a full understanding of the consequences.

At first blush, one is tempted to ask how any prejudice could possibly have arisen when *all* the participants at the state trial were laboring under the same misunderstanding. This question becomes more cogent when it is observed that the misunderstanding apparently resulted in petitioner being granted more than he was actually entitled to under the law. The situation would seem akin to a baseball game in which both teams erroneously believe that they are entitled to four outs per inning. In essence, the respondents would have the court adopt such an understanding of this case. The Attorney General further urges that the Virginia courts should now be allowed to decide whether the "game" is to be considered official, for purposes of the record, despite the unusual application of the rules. However, a closer evaluation of the case reveals that petitioner has already suffered material and fundamental deprivation of constitutional rights as a result of the misunderstanding.

 A plea is not voluntary unless it is made with full understanding of the consequences. *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1926). The level of understanding is to be measured by an examination as to "whether the plea represents a voluntary and intelligent choice among the alternate choices of action open to the defendant". *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). Unbeknownst to petitioner, pleas of guilty to the indictments removed all barriers to the death sentence, except for the trial judge's conscience and discretion. Would Harlow have entered his pleas had this fact been made known to him? Apparently, Harlow, as well as his trial attorneys, believed that his alleged intoxication on the day of the murders would serve to keep the punishment limited to that appropriate for second degree murder. In point of fact, Harlow unknowingly

---

**10.** Indeed, the question of the error regarding a guilty plea to the short form indictment was introduced by petitioner's state habeas attorney and cut off by the state habeas judge. *Transcript of Habeas Corpus Hearing,* Circuit Court of Fluvanna County, at 77.

admitted to the critical element of the crime of first degree murder, premeditation. Clearly, a plea cannot be intelligently and voluntarily made when such a key element as premeditation is admitted unwittingly. See *Henderson v. Morgan*, 426 U.S. 637, 647, n. 18, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). Indeed, in the instant case, petitioner had every reason to expect that his evidence of intoxication would be considered, under some standard of proof, before any finding of premeditation could be made. Only after the state habeas hearing did he finally discover that he had waived his right to be found guilty of first degree murder beyond a reasonable doubt.

Harlow, and his trial attorneys, fully believed that the evidence of intoxication would serve some purpose other than to merely enlighten the trial judge as to the circumstances of the case.[11] Indeed, it seems that the trial judge did purport to "weigh" the evidence of intoxication.[12] However, the transcript is silent as to what standard, if any, the judge attempted to apply in deciding that Harlow was to be sentenced for first degree murder on each indictment. Again, it could be argued that the judge was not bound, under Virginia law, to apply *any* standard of proof and that Harlow, in effect, received a "fourth out". However, the overriding point is that the right to be found guilty of first degree murder beyond a reasonable doubt was surrendered unknowingly. A plea entered under such circumstances is meaningless, both in law and fact.

The final element of prejudice suffered by Harlow occurred beyond the scope of the trial proceedings. Harlow, and his trial attorneys, erroneously believed that the burden would rest with the Commonwealth to raise the degree of the offense to first degree murder. Logically, it follows that they also believed that they could note an appeal as to the sufficiency of the evidence for conviction of first degree murder, should the trial judge reject their intoxication defense. As previously noted, Harlow later discovered that the Virginia Supreme Court would not consider a review of the sufficiency of the evidence for conviction of first degree murder. Clearly, Harlow's misunderstanding of the law led him to believe that he had certain choices and options in pleading which, in reality, were not open to him. Consequently, his pleas can simply not be considered to have been intelligently made. *North Carolina v. Alford, supra.*

## SUMMARY AND DISPOSITION

Would Harlow have plead guilty had he known that he was waiving all legal barriers between himself and a death sentence? Would Harlow, knowing his own degree of intoxication better than anyone else, have insisted on not guilty pleas had he known that he was admitting premeditation by pleading guilty? Would Harlow have plead guilty had he known that in so doing, he was foreclosing any appeal as to the sufficiency of the evidence for a conviction of first degree murder? Of course, no one at this point, including Harlow, knows the answers to these questions. More importantly, the answers to the questions hold absolutely no relevance. The crucial point is that questions of such magnitude must still be posed even after the conclusion of all the state court proceedings.

It is of no consequence that an expert trial attorney might review the objective evidence and conclude that Harlow has al-

---

11. It is clear from the trial transcript that intoxication evidence was introduced and that, especially as to the murder of the sister-in-law, Harlow put on a defense to first degree murder.

12. The trial judge offered the following analysis:

I find the defendant guilty of murder in the first degree. I don't think it is possible for him to have been as drunk as he said he was and done what he did so soon thereafter—the fact that he killed his wife and then loaded the gun again shows clearly that he intended to do it and he did it deliberately and must have intended to do it. A man under the influence of alcohol can nevertheless be guilty of first degree murder even though he is quite under the influence of alcohol. I have no doubt that he was under the influence of alcohol but he wasn't as drunk as he says he was. I just don't believe his testimony, that's it. *Transcript of Trial Proceedings*, March 20, 1970, at 132.

ready done as well as he possibly could in the way of sentence, given the circumstances of his case. Only Harlow could decide what pleas to offer. If there were gambles present in pleas of not guilty, the gambles were his alone since only he knew what appraisal he placed on his own life and liberty. The responsibility of the legal system is not to second-guess his judgment but to insure that he has access to all the relevant information before he makes his choice. Indeed, who is to say that justice would not have been best served by pleas of not guilty, even if the pleas had led to the result predicted by the trial attorneys. This court need only hold that justice can never be served when criminal proceedings are beset by a hopeless misunderstanding of the law on the part of the person who is the subject thereof.

■ The choice in pleas was Harlow's to make. If he had known the true ramifications of his various alternatives, he might have chosen differently. There is absolutely no doubt that petitioner misunderstood the nature of the waivers he was making with pleas of guilty. Moreover, the misunderstanding occurred not through his own ignorance but through a direct, though honest, misrepresentation made by officers of the court. In such a manner, petitioner was deprived of a fundamental right which he thought he had maintained despite his pleas, i. e., the right to be *proven* guilty of first degree murder. Clearly, petitioner's pleas can in no way be viewed as having been made voluntarily, intelligently, and with an awareness of the likely consequences. Consequently, the writ must issue.