Claude Z. LAMB, Petitioner,

v.

Robert F. ZAHRADNICK and Attorney General of Virginia, Respondents.

No. CA77-0282-R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 16, 1978.

Charles W. Periano, Richmond, Va. (court-appointed), for petitioner.

Asst. Atty. Gen. of Va., Jerry P. Slonaker, Richmond, Va., for respondents.

MEMORANDUM

MERHIGE, District Judge.

Petitioner, Claude Z. Lamb, an inmate at the Virginia State Penitentiary, seeks a writ of habeas corpus. Petitioner challenges state convictions for first degree murder and robbery, alleging that his con-

fession, admitted into evidence at the trial of those charges, was obtained involuntarily and in violation of his right to counsel. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 2241(a), 2254. The matter comes before the Court on respondent's motion to dismiss and briefs by both parties.

Certain of the facts are not in dispute: Early in the evening of April 15, 1975, police were dispatched to the Record Shop in Portsmouth, Virginia. Upon investigation, they discovered Mrs. Olga Gustavson, an elderly saleswoman, lying unconscious on the floor, and the cash register open. Mrs. Gustavson died six days later as a result of head injuries.

On April 25, 1975, Lamb telephoned one Troy Spencer, an attorney, and stated that he believed that he was wanted by the police in connection with the robbery and murder at the Record Shop. Petitioner informed Mr. Spencer that he wanted to turn himself in, and asked Mr. Spencer to negotiate certain terms for his surrender. In particular, Lamb specified that he would surrender only if: (1) Spencer would represent him; (2) he could turn himself in to Det. McPhaffer of the Norfolk Police Department, whom he trusted, rather than the Portsmouth Police, because he contended he had previously been beaten by Portsmouth officers; (3) McPhaffer would accompany him to the Portsmouth Police Station; and (4) the prosecution would give assurances that certain of petitioner's friends would not be arrested in connection with the incidents at the Record Shop.

Spencer agreed to represent Lamb, and in Lamb's presence, telephoned James Cales, Jr., the Commonwealth Attorney for the City of Portsmouth, to negotiate the terms of Lamb's surrender. Spencer stated that he did not want Lamb questioned, but Cales replied that he could not make any promises as to questioning, as he felt the police officers had a duty to interrogate the suspect. Cales suggested that Spencer take the matter up with the Portsmouth police when Lamb surrendered.

Upon completing the arrangements for surrender, Spencer accompanied Lamb to the Norfolk Detective Bureau. Portsmouth Detectives Ewing and Harvey had already arrived, and were waiting to escort Lamb back to Portsmouth. Spencer took the Portsmouth detectives into a separate room, outside Lamb's hearing, and informed them that he was Lamb's attorney, that he did not want his client questioned, and that Lamb did not wish to answer any questions. Ewing replied to the effect that they would interrogate Lamb once they got him back to headquarters. Spencer then told Ewing that he should make the questioning "perfunctory" and Ewing responded that he would do his duty. Spencer then stated that they should not try too hard. Spencer never asked to ride back to the Portsmouth station with Lamb and the detectives, nor to be present during any interrogation of Lamb.

When Spencer and the detectives returned to the room in which Lamb was waiting, Spencer admonished his client to make no statement. The detectives and Lamb then left for Portsmouth, and Spencer returned to his office, where he had other clients waiting.

Lamb was not questioned during the ride back to Portsmouth. After delivering Lamb and the Portsmouth detectives to the police station, Det. McPhaffer returned to Norfolk, and Ewing and Harvey took Lamb to the Detective Bureau.

It is at this point that the testimony of the detectives and Lamb diverges sharply. At the hearing in the Circuit Court of the City of Portsmouth, Virginia, upon Lamb's pretrial motion to suppress his confession, Det. Ewing testified as follows:

Ewing told Lamb that he was to be questioned about the murder and robbery at the Record Shop, but "before he said anything," Ewing advised Lamb of his *Miranda* rights. When Ewing informed the suspect of his right to remain silent, Lamb replied, "I know that; Mr. Spencer said I didn't have to say anything. . . . Every time I give a statement to anyone it gets screwed around with a different meaning." Ewing then told Lamb that "we would give him a copy of this statement for hisself [*sic*] and

that way he would have his copy and it couldn't get twisted around. . . ." Lamb then said that he would give a statement. Ewing finished reading Lamb his rights, "got a [waiver of] rights form that we use, read that to him and let him read it as I read it to him, and he signed that and I signed it, then he gave me the statement," confessing to the murder of Mrs. Gustavson and the robbery of the Record Shop. After the statement was reduced to writing, Lamb signed it. He then offered to take the detective to the scene of the murder, but the detectives, on the advice of the prosecutor, refused the offer. Det. Ewing testified further that the interrogation lasted approximately thirty minutes. He stated that Lamb did not ask to speak with Spencer during the questioning, and never suggested that he did not wish to be questioned. Further, Ewing stated that no promises were made to Lamb to induce his confession.

Det. Harvey's testimony at the hearing closely paralleled Ewings, differing only in that Harvey estimated that the interrogation lasted one to one and one-half hours.

Lamb's account of the events surrounding his confession differs significantly from the detectives' testimony. Lamb agreed that he had said something about not giving a statement because in the past "people have took [things I said] the wrong way," and that Ewing then promised to give Lamb a written copy of his statement. However, Lamb testified that Ewing's promise was unimportant to him, and that he didn't confess until some twenty or thirty minutes later, after his repeated requests to speak with Mr. Spencer had been denied. Lamb testified that he had asked to speak with his attorney at least seven times during the interrogation, but that each request was refused. He further stated that he had asked to use a telephone to call Spencer, but the detectives had told him that he could not make a call until after his interrogation, when he would be booked and placed in the

"bull pen" where there was a pay phone. Lamb testified that he had confessed because he feared that he would be "beaten by the Portsmouth police again, but that this time they would have a reason," although Lamb admitted that detectives Ewing and Harvey had not threatened him in any way; and because "they said if I cooperated with them the Judge would . . consider that . . . and lower my bail [and] possibly they would get my charges dropped down to manslaughter or even involuntary manslaughter. . . ."

Lamb testified that the detectives had not informed him of his *Miranda* rights, though he admitted that he knew them. He admitted signing the waiver of rights form, but contended that he had done so without reading it, and not until after he had confessed. Moreover, he had not been permitted to read the purported transcript of his statement before signing it. Finally, Lamb testified that the interrogation had continued for at least two hours.

It is undisputed that Lamb telephoned Spencer from the "bull pen" between six and six-thirty that evening, after he had confessed to Mrs. Gustavson's murder and the robbery of the Record Shop.

Lamb petitions this court for a writ of habeas corpus, alleging first, that his confession was obtained by police detectives, during custodial interrogation, after Lamb had stated he did not want to answer questions, in violation of his *Miranda* and Fifth Amendment rights; and, second, that the interrogation continued despite Lamb's repeated request to speak with his attorney, in violation of his Sixth Amendment right to counsel.[1]

### State Court Findings

The Circuit Court of the City of Portsmouth, before which the foregoing testimony was adduced, issued a brief letter-opinion denying Lamb's pretrial motion to suppress the confession. The substance of that opinion is set forth in full:

---

1. The Commonwealth concedes that petitioner's right to counsel had attached by the time he was questioned by the Portsmouth detectives. Moreover, it is undisputed that petitioner was subjected to "interrogation".

The Court is aware that once a defendant has an attorney there is a heavy burden on the Commonwealth to prove any statement made by the defendant was voluntary, willingly given and the defendant knew what he was doing at the time the statement was given.

In the present case Mr. Lamb had retained Mr. Spencer and Mr. Spencer made arrangements to turn Mr. Lamb over to the Portsmouth Police. Mr. Spencer asked Detective Ewing not to take a statement, but Detective Ewing said he was going to question the defendant and Mr. Spencer told him not to try too hard.

In *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 the defendant was refused the right to have his attorney present at the time he was being questioned. Mr. Spencer never asked to come to Portsmouth and was never refused the opportunity to come.

Much has been said about the "Miranda Rights"—*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, but in this case it is undisputed that Mr. Spencer had advised Mr. Lamb of his "Miranda Rights" and the defendant knew this. The Portsmouth Police advised Mr. Lamb of his rights and he signed a copy of same and also signed the statement. Mr. Lamb said he was not beaten or abused, but the police promised to reduce the charges and the bond. The Portsmouth Police deny this.

Another significant point to show the defendant was not afraid of the Portsmouth Police is the fact, he, Mr. Lamb, offered to take Detectives Ewing and Harvey to the scene of the alleged crime.

For these reasons the Court is of the opinion that Mr. Lamb made an intelligent and voluntary waiver of his rights and the statement will be admitted in evidence and the Motion to Suppress is overruled.

■ The law is clear that this Court must defer to any findings of fact made by the state court, unless petitioner:

shall establish or it shall otherwise appear. . . . (1) The merits of the factual dispute were not resolved in the state court hearing;

.    .    .    .    .

(8) Or unless . . . the federal court on a consideration of such part of the record [of the state court proceeding as is pertinent to a determination of the sufficiency of the evidence to support such factual determination] . . . concludes that such factual determination is not fairly supported by the record[.] 28 U.S.C. § 2254.

■ Where the state court has made no finding on an issue of fact essential to a determination of the relevant law, the federal court may make additional findings based upon its examination of the state court record. *Brewer v. Williams*, 430 U.S. 387, 396–97, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977). It may hold an evidentiary hearing if it is unable to resolve disputed facts solely on the basis of such examination of the record. Moreover, while the state court's findings of *fact* are generally presumed correct, the federal court has a duty to make its own conclusions of *law* based upon those facts.

■ It is clear that the question of whether Lamb effectively waived his constitutional rights is "not a question of historical fact, but rather one which . . . requires 'application of constitutional principles to the facts as found . . . .'" *Brewer v. Williams*, 430 U.S. at 403, 97 S.Ct. at 1242 (citations omitted). Therefore, this Court is not bound by the state court's conclusion of law that "Lamb made an intelligent and voluntary waiver of his rights . . . ." Instead, this Court must determine for itself whether petitioner waived his Fifth and Sixth Amendment rights. In *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966), the Court held:

If the [accused] indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to

exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. . . . If the [accused] states that he wants an attorney, interrogation must cease until an attorney is present. [Footnote omitted.][2]

Therefore, before this Court can determine the legal question of waiver, it must first resolve two crucial factual issues: (1) whether Lamb indicated to Detectives Ewing and Harvey that he did not wish to make any statement; and (2) whether Lamb requested to speak with Mr. Spencer at any time before or during the interrogation.

■ The state court which denied Lamb's motion to suppress made no written findings with regard to these disputed issues of fact. This Court, therefore, must undertake to decide these questions *dc novo*. The Court has carefully reviewed the transcript of the state hearing on Lamb's motion to suppress, but feels it is unable to resolve the essential question of credibility on the basis of a "dead" record. Accordingly, an evidentiary hearing will be conducted.

An appropriate order will issue.

---

**2.** In *Brewer*, 430 U.S. at 405–06, 97 S.Ct. 1232, the Supreme Court seemed to reserve for later decision the question of whether an accused whom police know to be represented by counsel can waive his Sixth Amendment right to have counsel present during interrogation, at least without first consulting with the attorney. Several courts have suggested a *per se* rule forbidding police interrogation once the right to counsel has attached and the police are aware that counsel has been retained by or appointed for the accused. See cases cited in *United States v. Brown*, 569 F.2d 236, 245 n. 9 (5th Cir. 1978) (Simpson, J., dissenting). Many courts, however, have rejected the *per se* approach. *Id.* at 245 n. 10.

The Court need not address this difficult constitutional issue at this time. If the Court determines that petitioner did not waive right to counsel, and resolution of this question would be unnecessary. *See Brewer v. Williams, supra.*