MEMORANDUM
WARRINER, District Judge.
This matter is before the Court on a petition for a writ of habeas corpus from a conviction in State court.
I.
Petitioner, Bronson Howard Knight, has moved the Court to issue a writ of habeas corpus or, in the alternative, to hold an evidentiary hearing on the matter. He alleges three grounds:
1. Petitioner’s plea of guilty at his trial was involuntary and unintelligent, in violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution;
2. Petitioner received ineffective assistance of counsel at his trial, in violation of his rights under the Sixth and Fourteenth Amendments of the United States Constitution;
3. Petitioner received ineffective assistance of counsel at his habeas corpus hearing, in violation of his rights under the Sixth and Fourteenth Amendments of the United States Constitution.
The facts underlying Knight’s petition follow. Petitioner was indicted on 4 April 1977 of statutory burglary and grand larceny. On 31 May 1977, the State trial court heard motions pertaining to an issue of double jeopardy. During argument on these motions, a dispute arose as to the waiver of a jury in the case. Petitioner was willing to waive but the Commonwealth refused to join in the waiver. See Va.Code § 19.2-257 (Repl. Vol. 1975). Petitioner’s counsel, Richard Ryder, expressed concern that jury sentencing would take place without benefit of a presentence report. (Tr. A, p. 47).[1]
The case came on for a jury trial on 2 June 1977. Ryder moved the court on the day of trial, but prior to its commencement, to overrule the Commonwealth’s insistence on a jury trial. The court refused. (Tr. B, p. 1). After the jury panel was brought in, defendant was arraigned in the presence of the panel and was directed to plead. (Tr. B, p. 12).[2] Defendant pled “Guilty on the [sic] protest.” (Tr. B, p. 12). Upon direction of the court to plead either guilty or not guilty, Ryder interposed and stated the plea to be guilty but under protest on the ground that Knight would be unable to have a presentence report prior to sentencing if he were convicted by a jury. (Tr. B, pp. 12-13). Ryder explained that Knight wanted a presentence report, which he *1305 would get if he were granted a bench trial, but which he would not get if he were tried on a plea of not guilty before a jury. (Tr. B, p. 13). The court noted his understanding of the federal practice providing for presentence reports in jury trials and indicated the probable invalidity of Ryder’s argument. (Tr. B, p. 14). The court then continued, stating that defendant had pled guilty in front of the jury panel and that the court would accept the plea of guilty “if he tells me he is in fact guilty.” Ryder then restated that his defendant’s plea was guilty under protest as to the first count. (Tr. B, p. 14). Knight also pled guilty under protest on the second count. Ryder noted that by his plea Knight was not waiving his objection to a jury trial nor his contention as to the presentence report. (Tr. B, p. 15).
The court then directly addressed the defendant as to the first charge, asking whether he had broken into the house “with the intent to commit larceny.” (Tr. B, p. 16) . Defendant stated that he was “admitting it for B & E but I did not do it.” On further questioning, he persisted in a denial of breaking into the house. (Tr. B, p. 16). The court nonetheless noted that it would accept the plea of guilty that “[defendant] admitfs] — if you understand what you are charged with — breaking and entering into the daytime home of M. E. Mason in Henri-co County, with the intent to commit larceny. That’s what you have pled guilty to. I take it by your plea that you are guilty in fact of that charge.” Defendant’s response: “I didn’t break in the house.” (Tr. B, p. 16). Knight then denied guilt on the second count of stealing the property in direct response to the court’s question. The court noted the guilty under protest plea but considered that the presentence report problem was not a substantial or justifiable reason for pleading guilty if defendant did not in fact commit the offense. (Tr. B, p. 17) .
Upon Knight’s statement that he would not get a fair trial by jury, the court stated that whatever protest defendant was making did not relate to the merits of the case but to some other extraneous matter, and that it understood the plea of guilty to be an admission of the things allegedly done in each of the two counts: “You did break and enter into the home of Mr. Mason with the intent to commit larceny, . . . [and] did steal some Civil War items from Mr. Mason’s home, in the value of more than $100. I understand that to follow from your plea of guilty.” (Tr. B, p. 18).
The court then stated that the only remaining task was to determine the appropriate disposition of the case noting the possible sentence on each count which defendant indicated he understood. (Tr. B, p. 18) . The court noted the limited grounds available to defendant for appeal as including the matters of the presentence report and waiver of trial by jury. Thereupon, the court “accept[ed] the pleas of guilty” on both counts indicating it would hear “the evidence fully” and thereafter, “on the pleas of guilty” and with a presentence report, would dispose of the case. (Tr. B, p. 19) . The court noted that defendant had consulted with his attorney constantly during the proceedings with respect to his plea, that he had been advised by the court what the court understood a plea of guilty to mean and the effect of his plea. The court reaffirmed that on appeal defendant would be precluded from raising the issue of his guilt or innocence following his guilty plea. (Tr. B, p. 19-20).
At this point, the Commonwealth’s Attorney requested the court to accept pleas of not guilty and try defendant by jury, stating the Commonwealth was prepared to proceed. The court denied the motion stating that as the jury panel had been in the courtroom during the above deliberations defendant could not be fairly tried before a jury chosen from that panel and that to try defendant on anything but a guilty plea would make a mockery of the system, as it would lead to defendants pleading guilty under protest in every case in front of the *1306 jury, and cases never would be resolved. (Tr. B, pp. 21 & 22)[3]
The court indicated that it believed defendant’s action was a calculated “play” to avoid being tried by a particular jury on that day and that the court would not allow a trial by a jury which had heard defendant plead guilty. The court added, however, that as to defendant’s denials, “I told Mr. Knight that I accept his plea of guilty only on the condition that I understand that he did do the things alleged in the two counts of the indictment, which have been read to him, which I have explained to him. And I accept the plea of guilty on that basis.” Then noting that the defendant had made no response to the court’s comment as to this understanding, the court dismissed the jury. (Tr. B, p. 23).
The court reconvened after a brief recess and stated it was about to “try the case.” (Tr. B, p. 24). The prosecutor, apparently addressing the court’s prior statement as to receiving evidence for disposal of the case, sought to clarify whether the evidence to be submitted was for use in sentencing. The prosecutor stated: “... you know, I — is this on the court’s own motion, I assume, about the disposure [sic]?” To which the court responded: “[a]nd I am going to try this case on that basis, yes, sir, Mr. Bradenham.” The prosecutor then waived opening statement, “based on the plea,” followed by Mr. Ryder, who also waived his opening statement. (Tr. B, pp. 24-25).
The Commonwealth then put on four witnesses and showed a videotape of defendant which included statements that he had committed the offenses as charged in the indictment. Ryder’s cross-examination of each of the witnesses was limited and focused primarily on establishing extensive cooperation between the federal and State authorities. At the close of the Commonwealth’s presentation, the defense put on no evidence on its own behalf. (Tr. B, p. 82), The court then asked counsel for “[a]ny comment on the issue of guilt or innocence. ... ” Following a closing argument by the Commonwealth, Ryder interposed objection to the racial makeup of the jury panel, which objection was disposed of. The court then stated: “[0]n the merits of the case . . . and based solely on the evidence presented here today, this Court can and would and does find the defendant guilty on each of the counts of the indictment.” (Tr. B, p. 85). Ryder then requested a presentence report.
Sentencing was heard on 3 August 1977 where Ryder moved for a stay of execution of judgment for a period of time sufficient for the defendant to petition the Supreme Court of Virginia for a writ of error. To the court’s inquiry of how that were possible on a plea of guilty, Ryder reasserted that the plea was “guilty under protest.” (Tr. B, p. 105).
In its order entered as of the trial date, the trial court recognized that at trial Knight, after consultation with his attorney, had pled guilty under protest to each count of the indictment. The court indicated that, “having made inquiry and being of the opinion that the accused fully understood the nature and effect of the plea of guilty and of the penalties that may be imposed upon his conviction, the waiver of trial by jury and effect upon his right of appeal, all as more fully reflected by the transcript, finding that his pleas were voluntary and intelligently entered, proceeded to hear and determine the case without the intervention of a jury as provided by law, and having heard the evidence and argument of counsel, the Court, solely upon the evidence and without consideration of the pleas, finds the accused guilty of statutory burglary and grand larceny. . . . ” Commonwealth v. Knight, No. 77F176 at 1 (Cir. Ct.Va., 2 June 1977) (Order).
The Supreme Court of Virginia denied a writ of error, finding no reversible error. Subsequently, on defendant’s motion, the Circuit Court reduced his sentence by two years. Commonwealth v. Knight, No. 77F176 (Cir.Ct.Va., 9 March 1978) (Order).
*1307 On 29 November 1978, Knight petitioned the Supreme Court of Virginia for a writ of habeas corpus alleging two grounds: (1) that the record of the trial did not affirmatively show that petitioner entered a plea of guilty under protest, voluntarily, intelligently, or with an understanding of the nature of the charges and consequences of his plea, and (2) that petitioner was ineffectively represented by retained counsel throughout his representation at trial. Pursuant to an order of the Supreme Court of Virginia, the Circuit Court of Henrico County held an evidentiary hearing on Knight’s claim of ineffective assistance of counsel but determined the issue relating to the plea of guilty on the basis of recorded matters. The evidentiary hearing was held on 11 September 1979 before the judge who had sat on the original trial. At the hearing the court, while hearing evidence only as to the issue of ineffective assistance of counsel, entertained argument on both issues. At this hearing defendant was represented by appointed counsel, Harvey Goodman.
At the habeas corpus hearing Knight protested his innocence and testified that he had not wanted to plead guilty at the trial. (Tr. C, pp. 4-9) He also testified that he had wanted a jury trial. (Tr. C, p. 17). He testified that he told Ryder two days before the trial that he had lied on the videotape and that he had two alibi witnesses who would testify on his behalf, (Tr. C, pp. 4-15) (See also Tr. C, pp. 6-7) but that Ryder rejected these witnesses as being of little use considering the evidence on the tapes. (Tr. C, p. 5). Ryder testified he could not recall any statement by Knight that he had lied on the tapes, (Tr. C, p. 31) or that Knight told him of any witnesses (Tr. C, pp. 33, 37, 39, 44) but, in any case, the two witnesses suggested by Knight would have been of no help and could not have refuted the evidence on the tape. (Tr. C, pp. 33, 37, 38, 39, 44). Ryder added, however, that if defendant had had an alibi witness he would have proceeded to use the witness and gone with a jury trial. (Tr. C, p. 43). Ryder also stated that while he does not usually try to determine the guilt of a defendant he does usually ask defendants whether they have alibis. (Tr. C, pp. 31, 37). In so stating, however, he emphasized that such would have been useless in the present case: “[Tjhere wasn’t any question of an alibi in this case.” (Tr. C, p. 37).
Knight testified further that Ryder told him at his arraignment to plead “guilty under protest.” (Tr. C, pp. 4, 5, 15, 16, 17, 18, 32-33, 41). He asserted that Ryder never told him to plead “guilty” or “not guilty.” Knight stated that he did not understand the “guilty under protest” plea and believed it to be a plea of not guilty, (Tr. C, pp. 4, 5, 9, 10, 17), or in any case, he did not intend his plea of “guilty under protest” to be a plea of guilty. (Tr. C, pp. 7, 8). Under cross-examination, Knight admitted that he knew there was no such plea as “guilty under protest,” (Tr. C, p. 19), that, at least as of 8 March 1978, he had knowledge of the limits placed upon him by pleading guilty, his rights against self incrimination, his rights to confront witnesses and compel their presence, and knowledge of what his offenses were. (Tr. C, pp. 14,21, 22, 23, 24). But he insisted that he had never been told the elements of the two offenses for which he had been charged. (Tr. C, pp. 14, 21, 22, 23, 24). He did admit, however, that he had been charged in federal court for activities arising from the same course of events. (Tr. C, p. 24).
Ryder’s testimony was at some variance with Knight’s. Ryder testified he discussed with Knight both specific and general aspects of the case on several occasions prior to trial. (Tr. C, p. 29).[4] He had also represented Knight on four or five other occasions, both before and after the trial in question, including the federal charge arising from the same event. (Tr. C, pp. 29, 34).
*1308 Ryder testified that his actions in the case were governed primarily by two factors. First, the strength of the evidence on videotape was so strong that he saw no way to overcome Knight’s admissions. (Tr. C, pp. 31, 33, 37, 38, 39, 44). Second, he believed that the Commonwealth’s Attorney was using its power to require a jury trial as a club because of the historical record of convictions and harsh sentences meted out by juries in Henrico County. Accordingly, Ryder’s strategy was to set up an appeal on the constitutional issue of whether the Commonwealth’s Attorney could prevent defendant from effectively waiving a jury. (Tr. C, pp. 32, 39, 41). Ryder saw no question as to the factual situation and asserted, upon being told of Knight’s two proposed witnesses, that even if he had been told about them, which he denied, they would have been unable to refute the Commonwealth’s case. (Tr. C, pp. 33, 37, 38, 39, 44).
Ryder asserted that the purpose of the “guilty under protest” plea, which he characterized as being a “Ryder plea,” (Tr. C, p. 41), was to preserve his point for appeal about the constitutionality of the Commonwealth’s refusal to consent to defendant’s jury waiver. (Tr. C, pp. 32, 33, 34, 41). Ryder initially testified that he discussed the plea with Knight prior to the trial, (Tr. C, p. 32), but also admitted that he didn’t know when he told Knight to plead “guilty under protest.” (Tr. C, p. 41). Subsequently, however, Ryder admitted he told Knight to plead guilty under protest only at the time of the arraignment. (Tr. C, p. 47). Ryder’s intention was to enter a plea of guilty and not to enter a plea of nolo contendere. (Tr. C, p. 41). Ryder asserted that he explained everything he did to the defendant and that he did not tell the defendant a “guilty under protest” plea was the same as a “not guilty plea.” (Tr. C, p. 41). Ryder insisted that defendant knew the position he was in and the purpose of the plea and that it had no relation to the facts, its sole purpose being to challenge the constitutionality of the jury waiver issue. (Tr. C, pp. 34, 35).
On the issue of the presentence report, Knight testified that Ryder told him he would not be entitled to a presentence report if convicted by a jury. (Tr. C, p. 7). Ryder testified that he did not want a presentence report and that he did not think that there had been any discussion with Knight on the issue of a presentence report and its relation to a jury trial. He stated he had raised the issue at trial as a point of argument. (Tr. C, pp. 41, 42, 43).[5] Yet, after conviction, Ryder requested a presentence report. (Tr. B, p. 85).
On the issue of a jury trial, Knight testified he believed he had the right to either a bench or jury trial and that he had wanted a jury trial. (Tr. C, pp. 7, 17). He stated that Ryder told him he was going to seek a bench trial, because of the evidence and nature of Henrico County juries. (Tr. C, pp. 5-16). He was also aware that the Commonwealth would seek a jury trial. (Tr. C, pp. 28, 40). Ryder testified that he had discussed the jury trial issue with Knight on several occasions and that Knight was aware of his rights as to a jury and concurred in his decision to go for a bench trial. (Tr. C, pp. 32, 40). Ryder wanted to try the case on a not guilty plea before a judge, (Tr. C, pp. 46, 47), and realized that upon a plea of guilty under protest that a trial before a jury drawn from the panel would be impossible. (Tr. C, p. 48). Knight testified that no advice was given to him on the relationship between his plea and the possibility of a jury trial (Tr. C, p. 17) nor was he given advice as to any lesser offenses. (Tr. C, p. 29). Knight expressed some confusion as to his rights regarding witnesses on a plea of guilty under protest, believing that he would be able to call witnesses on such a plea. (Tr. C, p. 9). Defendant admitted that he knew he would be sentenced on the plea that he entered,, (Tr. C, p. 8), and appeared to recognize that his plea had been converted to a guilty plea, insisting however that such conversion had been done involuntarily. (Tr. C, p. 8, 19). Ryder testified that he never told the defendant that witnesses would be *1309 allowed to testify on a guilty under protest plea.
Ryder testified that he has been a practicing attorney for 28 years and that 90% of his work is criminal defense work. (Tr. C, p. 29). He testified that he had done all that he could for Knight, (Tr. C, pp. 34, 48), that he had explained to Knight everything done throughout the course of the case, (Tr. C, p. 48), that he had represented the defendant on several other occasions, (Tr. C, pp. 29, 34), and, that he did not recall the defendant ever having expressed any dissatisfaction with his services. (Tr. C, p. 34). Ryder noted that the Commonwealth’s Attorney had refused to engage in any plea bargaining with him. (Tr. C, p. 36).
As to his performance during trial, Ryder testified that, although on appeal he had stated that the trial had been conducted as if on a plea of not guilty, if indeed the case had truly involved a plea of not guilty he would have cross-examined the various prosecution witnesses more extensively. (Tr. C, p. 49). However, he admitted that no stipulations had been made and that the case was tried by evidence from statements of witnesses in the witness box who had been subject to cross-examination. (Tr. C, p. 48).
Following the testimony, the trial judge entertained argument from counsel and made several statements concerning the reasons for the way in which the trial was conducted. The judge stated for the record that he had accepted the guilty plea after advising the defendant about the consequences of the plea. (Tr. C, p. 50). The reason he accepted the plea was primarily for pragmatic reasons as once the “guilty under protest plea” was entered the jury could no longer try the case and there was no other way to get the case disposed of at the time. The judge made the following statement:
“. . . we had the jury here. Obviously that jury could not try the case having been in the courtroom when the man pleaded guilty under protest, but it was accepted because I felt that there was no other way to get the case disposed of. The Commonwealth’s Attorney was not going to waive a trial by jury, and the defendant had always pled under protest any time we arraigned him before a jury. So far as the court was concerned, the ■case was while [sic] a plea of guilty, the court tried the case as if it were on a not guilty plea. The transcript on page 85, after some discussion of the case, says ‘without regard to the guilty pleas, and based solely upon the evidence presented here today, this court can, and would, and does find the defendant guilty on each count of the indictment.’ ” (Tr. C, pp. 50-51).
The court expressed its view that the . actions in the courtroom were “nothing but a play to either get the case continued again until we get another jury down here or a play just to get that jury out of the way so that the case can be tried without a jury.” (Tr. C, p. 54). Upon Goodman’s suggestion that considering defendant’s protestations of innocence the court initially could have ordered a mistrial then recused itself if the problem arose again, the court stated its concern for the practical problems of another guilty under protest plea and other possible delays, wondering why the court should recuse itself when the defendant and his attorney “got the courtroom in the box it got us in.” (Tr. C, pp. 55-56).
Following this hearing, the court made its findings of fact and conclusions of law addressing two issues:
(1) “Petitioner alleges that the records of his trial do not affirmatively show that he entered a plea of guilty under the protest voluntarily, intelligently, with an understanding of the nature of the charges and the consequences of his plea.”
(2) “Petitioner alleges that he was ineffectively represented by his retained counsel throughout his representation on the charges of breaking and entering and grand larceny culminating in his trial of June 2, 1977.”
On the issue relating to the plea, which the court determined on the basis of the record, the court made the finding that the
*1310 conviction order of 2 June 1977 revealed that a plea of guilty under protest was entered and that the defendant fully understood the nature and effect of a guilty plea and the consequences thereof, and that his plea was voluntarily and intelligently entered. Knight v. Superintendent of the Powhatan Correctional Center, No. 77-F— 176 at 1 (Cir.Ct.Va. 16 October 1979) (Findings of Fact and Conclusions of Law). The court additionally found that the 2 June 1977 order also stated that the court found the defendant guilty of statutory burglary and grand larceny solely upon the evidence and argument of counsel and without consideration of the pleas. Id. at 2. The court found further that the plea of “guilty under protest” was a ploy designed by the defense to achieve exactly what it did achieve, a trial by the court and not a jury. Id. at 2. Based on the above factual findings, the court concluded as a matter of law that the petitioner had not proven his plea was involuntary, or unintelligent, and made without an understanding of the nature of the charges and consequences of his plea. Id. at 4.
On the issue relating to ineffective representation of counsel, determined on the basis of the ore ten us habeas corpus hearing, the court concluded that the evidence was insufficient to establish the petitioner’s allegations of ineffective representation of counsel. The court found that Knight had failed to prove (1) that he was improperly advised as to what a “guilty under protest” plea was, (2) that he had never been advised of his right against self-incrimination, (3) that he had never been advised of the right to have witnesses in his favor, (4) that Ryder never attempted to interview Knight’s witnesses, (5) that Ryder improperly advised him regarding the presentence report. As to this latter point the court stated that even if petitioner’s testimony on the point were taken as true, that would not make representation constitutionally bad under Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) or under Virginia’s farce and mockery rule. Accordingly, the court found as a fact that discussions about the presentence report in the context of a jury trial were of no consequence to the defendant or his counsel in the preparation of trial or in the trial itself. Moreover, upon consideration of the entire petition, the testimony presented at the habeas corpus hearing and the record of proceedings culminating in the sentences of August 3, 1977, the court found that petitioner had not borne the burden of proving that the representation given to him by the attorney was ineffective. The court concluded that there was no evidence before the court to show that representation of counsel was not within the range of competence demanded of attorneys in Marzullo v. Maryland, supra, or Slayton v. Weinburger, 213 Va. 690, 194 S.E.2d 703 (1973). The court held such to be true as a matter of law. These conclusions were embodied in an order of the Circuit Court denying the writ of habeas corpus. Knight v. Superintendent of the Powhatan Correctional Center, No. 77-M-613 (Cir.Ct.Va. 31 October 1979) (Order).
Knight appealed the circuit court’s ruling to the Supreme Court of Virginia, additionally challenging the effectiveness of counsel appointed to represent him in the circuit court habeas corpus proceeding. The Supreme Court of Virginia denied Knight’s petition for appeal on 13 June 1980. Knight thereupon filed a petition in this Court on 19 November 1980. On 23 April 1981 this Court ordered that John A. Gibney, Jr., Esq., be appointed to represent plaintiff who, in federal court, had been proceeding pro se.
II.
 Knight bases his petition here on the three grounds previously set out. A petitioner seeking a writ of habeas corpus must first present his claims to the State courts and exhaust all his available State remedies before proceeding to federal court. 28 U.S.C. § 2254(b); Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Moreover, the claims raised in federal court must be the same claims asserted in the State proceedings for habeas relief. *1311 Pitchess v. Davis, 421 U.S. 482, 487, 95 S.Ct. 1748, 1751, 44 L.Ed.2d 317 (1975); Picard v. Connor, 404 U.S. 270, 275-76, 92 S.Ct. 509, 512-13, 30 L.Ed.2d 438 (1971); 17 Wright,' Miller & Cooper, Federal Practice and Procedure § 4264 (1978). A federal district court may not consider claims which have not been exhausted properly within the State courts, see Slayton v. Smith, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971), though it may segregate these claims and consider other claims properly presented in the petition. Hewett v. North Carolina, 415 F.2d 1316, 1320 (4th Cir. 1969); Shipwash v. Collins, 475 F.Supp. 1000, 1002 (W.D.Va. 1979). Petitioner has satisfied sufficiently the exhaustion requirements for this Court to make a dispositive ruling.
Petitioner’s allegations are sufficient, if the Court were to accept his version of the events, to justify a writ. See Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971). Petitioner’s version as to much of what transpired, however, is at odds with the findings and conclusions of the State court which heard the principal case and the subsequent petition for habeas relief. Section 2254(d) of the United States Code, 28 U.S.C. § 2254(d), provides that where a habeas petitioner has received a full and fair hearing before a State trial court on the factual issues that court’s findings of fact are presumed correct absent the applicability of eight enumerated exceptions. 28 U.S.C. § 2254(d)(l-8); Sumner v. Mata, 446 U.S. 1302, 100 S.Ct. 1630, 64 L.Ed.2d 216 (1981); Cuyler v. Sullivan, 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980); Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963).
No presumption attaches to a State court’s determination as to matters of law or mixed questions of law or fact, Cuyler v. Sullivan, supra; Townsend v. Sain, supra; Lamb v. Zahradnick, 452 F.Supp. 372, 375 (E.D.Va.1978),[6] and the federal court may resolve these issues in a proper case without resort to an evidentiary hearing. Barker v. Ohio, 330 F.2d 594 (6th Cir. 1964). See also, Cuyler v. Sullivan, supra; Townsend v. Sain, supra. The question of whether a defendant has waived his constitutional rights requires the “application of constitutional principles to the facts as found. . . . ” Brewer v. Williams, 430 U.S. 387, 403-04, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424; Lamb v. Zahradnick, supra, at 375.
Petitioner’s initial claim is that his plea was not entered voluntarily and intelligently. A guilty plea, to be valid, must be entered voluntarily, knowingly, and with an understanding as to the nature of the charges and of the consequences that will flow from the plea. This must be shown affirmatively in the record. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The level of understanding is to be measured by an examination as to “whether the plea represents a voluntary and intelligent choice among alternate choices of action open to the defendant.” North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). Accordingly, the court, prior to accepting a plea of guilty, should canvass the matter with the accused to make sure he has a full understanding of what the plea connotes and of what consequences will flow from that plea. Boykin v. Alabama, supra, 395 U.S. at 244, 89 S.Ct. at 1712.
The difficulties in the present case began when Knight, upon the advice of counsel, entered a nonexistent plea of “guilty under protest” at his arraignment, held in the presence of the jury panel. The court initially engaged in a colloquy with Knight and Ryder in an effort to determine the meaning of the plea. Knight insisted on his *1312 innocence. Ryder stated that the plea was guilty but entered under protest.
Confronted by the dilemma of Knight’s plea and the subsequent discussion, all in the presence of the panel, the court indicated it would treat Knight’s plea as a plea of guilty, perhaps basing its determination on Ryder’s explanation of the plea.[7] In so doing, the court explained to Knight the consequences that would normally flow from a plea of guilty. The court was obviously concerned and affected by the practical problems presented by the situation. The court believed that petitioner’s plea was a ploy designed to achieve a trial by the court or otherwise delay the trial. The court also believed that the defendant and his counsel were responsible for the problem and saw no reason to accommodate them or yield to them. When the court then proceeded to hold an evidentiary hearing both Ryder and the prosecutor obviously believed it was merely to assist the court in determining the appropriate sentence, as is consistent with Virginia law. See Va. Code § 19.2-257 (1975); Kibert v. Commonwealth, 216 Va. 660, 222 S.E.2d 790, 793 (1976); Hobson v. Youell, 177 Va. 906, 15 S.E.2d 76, 78 (1941). Ryder put on no defense on behalf of Knight and his cross-examination was minimal, addressed almost entirely to the ameliorative effect of the federal punishment arising from the same acts.
Following closing arguments, however, the court stated that it found defendant guilty on the evidence, without regard to the guilty pleas. (Tr. B, p. 85). The court stated at the habeas trial that it had tried the case “as if it were on a not guilty plea.” (Tr. C, p. 50). Unfortunately, the court had never informed defense counsel or the prosecutor of its intention to conduct a bench trial on the merits and in fact created a substantially different impression in the minds of counsel. (Tr. B, pp. 24-25).
Ultimately, the case boils down to the State court finding itself in the uncomfortable position of a defendant who had pled guilty, or “guilty under protest,” yet who protested his innocence, all in the jury’s presence. The court, recognizing that the case could not be tried before that jury, believing the plea to be a defense ploy to put the trial off, which the court was unwilling to do, and with the best of intentions, decided, in pectore juris, to resolve the problem by hearing the evidence at a bench trial and deciding the guilt or innocence of defendant on the merits. In the confusion generated at the arraignment and the court’s response thereto, the court failed to apprise the defendant as to the actual consequences that were to flow from his plea. The court, having unwittingly created the impression that an evidentiary hearing would be conducted to aid the court in sentencing, neglected to inform Knight that the consequence of his plea would be, in actuality, a bench trial on the merits. There, of course, was no reason why Knight or his counsel should have foreseen such a turn of events.
There is no doubt as to a Virginia trial court’s authority to hear evidence following entry of a valid guilty plea. Section 19.2-257 of the Virginia Code, Va.Code § 19.2-257 (Repl.Vol. 1975),[8] as interpreted by the Supreme Court of Virginia in Kibert v. Commonwealth, 216 Va. 660, 222 S.E.2d 790 *1313 (1976), authorizes such action.[9] The law is not so clear as to the purpose for which such an evidentiary hearing might be held.
Under Virginia law a valid plea of guilty which has been accepted by the trial court is equivalent to a conviction of the offense to which it is directed. The effect is to authorize imposition of the sentence prescribed by law for that offense. Kibert v. Commonwealth, supra, at 664, 222 S.E.2d 790, 793; Peyton v. King, 210 Va. 194, 196, 169 S.E.2d 569, 571 (1969); Crutchfield v. Commonwealth, 187 Va. 291, 296, 46 S.E.2d 340, 342 (1948); Hobson v. Youell, supra, at 912, 15 S.E.2d 76, 78 (1941). Such a plea is a “self-supplied conviction of the offense to which it is directed,” Kibert v. Commonwealth, supra, at 664, 222 S.E.2d at 793, for which the trial court need hear no additional evidence to sustain a conviction. “[T]he law would engage in superfluities to impose the requirement that evidence is necessary to sustain that which sustains itself.” Id. Moreover, a guilty plea constitutes a waiver of all non-jurisdictional defenses. Peyton v. King, supra, at 196, 169 S.E.2d at 571; Kibert v. Commonwealth, supra, at 664, 222 S.E.2d at 793.
Section 19.2-257 of the Virginia Code, however, provides that the trial court, upon a plea of guilty, “shall hear and determine” the case without a jury. Moreover, it “shall have and exercise all the powers, privileges, and duties” of a jury in such cases. Va. Code § 19.2-257 (Repl.Vol. 1975). The language of section 19.2-257 is both expansive and mandatory. It vests the trial court with almost unfettered authority as to a post guilty plea hearing. Such language standing alone would appear to encompass and authorize the procedures utilized by the trial court in the instant case. Ryder, having practiced criminal law for twenty-eight years would have been expected to know the language of the statute. But the Supreme Court of Virginia has restricted the scope of the statute through interpretation and application of section 19.2-257 and its predecessors.[10]
In Hobson v. Youell, supra, the Supreme Court of Virginia stated that upon entry of a guilty plea no evidence of guilt was required to proceed to judgment but the court might hear evidence as to aggravation or mitigation of the offense. Id. at 912-23, 15 S.E.2d at 78.[11] The Supreme Court in Kibert v. Commonwealth, supra, added to Hobson by stating that:
[i]n accepting a plea of guilty, any Virginia trial judge is, of course, free to hear the evidence he deems necessary to an understanding of the case and to the fixing of an appropriate sentence. This does not mean, however, that evidence must be heard upon a plea of guilty.
Id. at 664, 222 S.E.2d at 793 (emphasis in original). Read together Hobson and Kibert suggest a limited purpose for holding an evidentiary hearing after the court has accepted an accused’s guilty plea. Such a view comports with the impression created by the trial court and the readily apparent understanding of both the defense counsel and the prosecutor in the instant case.
Only Smyth v. Morrison, 200 Va. 728, 107 S.E.2d 430 (1959), and McGrady v. Cunningham, 296 F.2d 600 (4th Cir. 1961), cert. denied, 369 U.S. 855, 82 S.Ct. 944, 8 L.Ed.2d 14 (1962), both decided between Hobson and Kibert, suggest that a literal reading of the statute is the correct standard to follow. In Smyth, the Supreme Court of Virginia reviewed two convictions on a habeas corpus petition. The first conviction was challenged on grounds that the judgment order *1314 failed to indicate what plea had been entered by the accused. The order stated that the court, after arraignment and with the consent of the Commonwealth Attorney, proceeded to hear and determine the cause without a jury. After hearing the evidence and argument of counsel, it found the accused guilty of the offense charged and sentenced him.
The Supreme Court reasoned that a guilty plea must have been entered as the record failed to indicate the accused’s consent to the waiver of a jury trial, as required by the statute when a plea of not guilty has been entered. Having made that determination, the Court reviewed the language of section 19-166 of the Virginia Code, 1950 [now section 19.2-257], and concluded that the accused had been “tried without a jury,” dismissing the Commonwealth Attorney’s consent as mere surplus-age. Id. at 732, 107 S.E.2d at 433-34. In reaching this conclusion, however, neither the trial court nor the Supreme Court indicated whether the evidence heard following the plea was used to determine the accused’s guilt or whether it was used merely to aid the court in its “understanding of the case.”
The Supreme Court also reviewed the second conviction, in which the trial court following entry of a guilty plea, heard evidence and convicted the defendant of a lesser included offense. In this instance, the Court concluded that indeed the accused had been convicted based on the evidence heard by the trial court. The Court reasoned that:
The purpose of hearing evidence is to determine whether an accused is guilty or not and the measure of guilt. One pleading guilty should not be found guilty of a higher offense than the evidence shows he committed.
Under his plea of guilty of burglary, Morrison might have been sentenced to the highest punishment imposed for that act. However, in the exercise of its jurisdiction and power, the trial court properly heard the evidence and, in its discretion, found the accused guilty of the [lesser] offense shown to have been committed by him.
Id. at 734, 107 S.E.2d at 434-35.
Although Smyth suggests that the statute authorizes the trial court to exercise unfettered authority following the entry of a guilty plea, the Supreme Court subsequently limited the scope of Smyth in Albert v. Commonwealth, supra, such that a trial court is merely authorized, in its discretion, to “hear evidence upon a plea of guilty and to convict the accused of a lesser offense.” Id. at 665, 222 S.E.2d at 793.
In McGrady v. Cunningham, supra, the Court of Appeals for the Fourth Circuit suggested that section 19.1-192 [now section 19.2-257] “required” the court to “try the case” following entry of a guilty plea. The Fourth Circuit believed that urider Virginia law the sentence could not be imposed upon the guilty plea alone. Id. at 602. Although the Fourth Circuit’s interpretation accurately reflects a literal reading of the statute, the opinion makes no reference to Smyth v. McGrady, supra, or the Supreme Court’s interpretation of the statute in Hobson v. Youell, supra.[12] Moreover, when the Supreme Court of Virginia next considered the pertinent statute in Kibert v. Commonwealth, supra, the Court made no reference to the Fourth Circuit’s McGrady opinion. Indeed, the Supreme Court reached a conclusion that is at odds with the Fourth Circuit decision. Although McGrady is in line with a literal application of section 19.2-257, the Supreme Court of Virginia, as final arbiter of Virginia law, has diluted the force of the statute through interpretation such that the view expressed in McGrady is of no value.
The interpretations of section 19.2-257 and its predecessors by the Supreme Court of Virginia demonstrates that a trial court has considerable discretion as to whether it will hear evidence following the entry and acceptance of a guilty plea. The authorities indicate that the court may exercise such discretion to better its under *1315 standing of the case, to bring out aggravating or mitigating factors pertinent to sentencing, and to satisfy itself that the accused committed the offense to which he has pled guilty. But in every instance, the court and the parties are subject to the waivers and presumptions that are incident to the entry of a guilty plea.
Although Smyth authorized a court to determine, upon a guilty plea, that an accused is guilty only as to a lesser included offense of the offense to which he pled guilty, such a decision is no more than authorizing the court to determine that there are significant mitigating factors in a case. It is not the equivalent of an independent bench trial on the merits. If section 19.2-257 were construed to mean that the trial court might conduct a bench trial on the merits of a case, such an interpretation would wholly nullify the statutorily required concurrence of the Commonwealth Attorney to hold a bench trial upon a plea of not guilty. See Va.Code § 19.2-257. Though the Supreme Court of Virginia has not dealt with the impact of section 19.2-257 on the Commonwealth’s right to require a jury, the decided cases rebut the idea that the section would be given such broad scope.
Even if this Court were to assume that the statute, as interpreted by the Virginia Supreme Court, did authorize the State trial court to act as it did, Knight would still be entitled to relief. The trial court in the instant case stated clearly that it was accepting the pleas of guilty and that it would proceed to sentence the accused “based on the pleas of guilty,” a presentence report, and the evidence introduced at an evidentiary hearing. (See Tr. B, pp. 19, 24-25). Notwithstanding the Smyth interpretation of the statute, the court’s procedure indicated a course of action wholly in line with the construction of the statute contained in Kibert and Hobson. The trial court, however, did not follow the course it had indicated. Instead, the court proceeded to hold a bench trial on the merits of the case “as if it were on a not guilty plea.” (Tr. C, pp. 50-51). Even Smyth would disapprove a bench trial on a not guilty plea absent the concurrence of the Commonwealth Attorney. See Smyth v. Morrison, supra, at 732, 107 S.E.2d at 433. More important, the court never informed the parties that it was going to alter its course from what it had initially described as being the consequence of entering a plea of guilty.[13]
The result is the same whether one proceeds on the theory that the law of Virginia does not authorize the State trial court’s action in this case or upon the theory that Knight was misled as to the consequences of his plea. The plea could not have been made intelligently for the simple reason that neither defendant nor his counsel realized the consequences — that a trial on the merits would ensue.[14] Only the court knew what it had in mind with respect to the nature of the proceeding to follow.
The case of Harlow v. Murray, 443 F.Supp. 1327 (W.D.Va.), aff’d, 588 F.2d 1348 (4th Cir. 1978), provides some guidance as to *1316 how this Court should proceed in the instant case. In Harlow, petitioner had been indicted in State court for murder and pled guilty on advice of counsel. The State trial court had inquired as to whether counsel had explained the nature of the charges and consequences of a guilty plea to the defendant. Upon being satisfied, the court heard motions and evidence and proceeded to find the defendant guilty.
Following an unsuccessful appeal and habeas petition, the United States District Court issued a writ on petitioner’s second petition for habeas relief. The court found that even though the petitioner had been fully counseled by his trial attorneys as to their understanding of the Virginia law their understanding and that of the trial court had been in error. The court concluded petitioner’s pleas were not occasioned by a full understanding of the consequences of his plea. Id. at 1332. Petitioner, by pleading guilty, had unwittingly admitted the key element of premeditation. He believed, despite his plea, that the Commonwealth would have to prove that element. He believed he was pleading to second degree murder when in fact the law construed such a plea to constitute admission of first degree murder. Thus petitioner had waived, through misadvice as to the Virginia practice, the expectation that the Commonwealth would have to prove premeditation, and hence, first degree murder, beyond a reasonable doubt.
In concluding that his plea be struck, the court stated:
It is of no consequence that an expert trial attorney might review the objective evidence and conclude that Harlow has already done as well as he possibly could in the way of sentence, given the circumstances of his case. Only Harlow could decide what pleas to offer. If there were gambles present in pleas of not guilty, the gambles were his alone since only he knew what appraisal he placed on his own life and liberty. The responsibility of the legal system is not to second-guess his judgment but to insure that he has access to all of the relevant information before he makes his choice.... This court need only hold that justice can never be served when criminal proceedings are beset by hopeless misunderstanding of the law on the part of the person who is the subject thereof.
The choice in pleas was Harlow’s to make. If he had known the true ramifications of his various alternatives, he might have chosen differently. There is absolutely no doubt that petitioner misunderstood the nature of the waivers he was making with pleas of guilty. Moreover, the misunderstanding occurred not through his own ignorance, but through a direct, though honest, misrepresentation made by the officers of the Court. In such a manner, petitioner was deprived of a fundamental right which he thought he had maintained despite his pleas. . . . Clearly petitioner’s pleas can in no way be viewed as having been made voluntarily, intelligently, and with an awareness of the likely consequences. Consequently, the writ must issue.
Id. at 1333-34.
The instant case, though arising on facts different from those in Harlow, finds Knight in much the same situation as Harlow. Both defendants, having entered pleas on advice of counsel and having been informed by the courts of the consequences of the pleas, were met with substantially different results.
The court’s failure to inform Knight of its intention to proceed as if on a not guilty plea with a bench trial on the merits denied defendant crucial knowledge as to the ramifications of his plea. As Ryder was also misled he employed a strategy that was misaligned with the actual proceedings thereby additionally denying defendant the effective assistance of counsel to which he was entitled. See Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64. L.Ed.2d 216 (1980); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Marzullo v. Maryland, supra.[15]
It was incumbent on the court to inform defendant of all the ramifications of his plea, particularly where the plea tendered *1317 had caused so much confusion. Defendant, his counsel, and the prosecutor clearly were of the impression that the court was treating Knight’s plea as a guilty plea and was proceeding to an evidentiary hearing to aid with sentencing or to a better understanding of the ease. Notwithstanding all of the court’s good intentions in proceeding as it did, the defendant was misled as to the consequences of his plea and had no way of foreseeing the events that did occur. In such circumstances, this Court must conclude that defendant did not enter his plea knowingly and intelligently so as to represent a “voluntary and intelligent choice among alternate choices open to the defendant.” North Carolina v. Alford, supra, at 31. He did not know the consequence of his plea.
Accordingly, a writ of habeas corpus must issue subject, however, to the Commonwealth affording Knight a new trial to commence within 60 days from the entry hereof at which he shall be afforded the opportunity to plead anew to the charges against him.
And it is so ORDERED.
APPENDIX A
THE COURT: 24 jurors present. Let’s proceed to arraign the defendant.
THE CLERK: Bronson Howard Knight, alias Clyde Knight, you stand in judgment for this that you did or about February 8, 1976 in this county, within the jurisdiction of this Court, break and enter in the daytime the dwelling house of M. E. Mason, with intent to commit larceny, against the peace and dignity of the Commonwealth of Virginia. Do you plead guilty or not guilty?
DEFENDANT: I plead guilty on the protest.
THE CLERK: You plead guilty under protest?
MR. BRADENHAM: I object to that plea. Plead guilty or not guilty.
THE COURT: Mr. Bradenham, be quiet, you be quiet, please, sir. The plea is guilty or not guilty, Mr. Ryder? You may discuss it.
MR. RYDER: Judge, he has plead guilty. He’s states to the Court that he protests so doing that.
THE COURT: On what basis does he protest?
MR. RYDER: He believes that if he goes to trial before a jury, the jury—
MR. BRADENHAM: Judge, I’ll object to that.
THE COURT: Wait a minute, Mr. Bradenham.
MR. BRADENHAM: The jury’s still in the Courtroom on this kind of comment.
THE COURT: All right, Mr. Bradenham, sit down. Go ahead.
MR. RYDER: He believes that if he pleads not guilty and is tried by a jury under these circumstances that he will be denied his constitutional right, what he feels is a constitutional right to have a presentence report prior to the jury sentencing him if he is convicted by the jury. He feels that he’s being denied that right by reason of fact that he’s being forced into a trial before a jury when he does not want a jury. He wants the opportunity of getting a presentence report in the event the Court, without a jury, found him guilty. He could get that if he were tried on a plea of not guilty by the Court without a jury. With a jury the jury would convict him; if they convicted him they would sentence him without benefit of a presentence report, and he feels that *1318 he’s being denied his constitutional rights, and of course, by that, into a plea of guilty, sir.
THE COURT: Mr. Ryder, the Federal Courts has a right to a presentence report following a finding of guilty by a jury. So, therefore, your objection of that seems to me seems invalid. The defendant has pled guilty in front of the jurors who are assigned to have this case, and I will accept his plea of guilty if he tells me he is in fact guilty. The charges for this particular charge is statutory burglary on February 8, 1976. And, of course, he’ll get a presentence report. Does the defendant plead guilty or not guilty?
MR. RYDER: His plea is guilty, Your Hon- or. He said that, sir.
THE COURT: Defendant’s plea is guilty.
MR. RYDER: Under protest.
THE COURT: Let’s arraign him on the second count, Mrs. Baker.
THE CLERK: You also stand indicted for this that you did on or about February 8, 1976, within this County, within the jurisdiction of this Court, steal property, namely four Civil War rifle muskets, two Civil War revolvers, assorted Confederate and U. S. belt plates, buttons and buckles, and assorted smoking pipes and assorted artifacts, all having a value of $100 or more belonging to M. E. Mason, against the peace and dignity of the Commonwealth of Virginia. Do you plead guilty or not guilty?
DEFENDANT: I plead guilty underneath protest.
THE COURT: All right, you may have a seat, please.
MR. RYDER: Judge, I’d like to speak for the record that the defendant by entering plea of guilty is not waiving his objections that were raised in the motion and the objections that were raised in the motion which was argued on day before yesterday.
THE COURT: I understand that the defendant still has his objections with respect to the motion we had two or three days ago, his objection with respect to the motion to the jury today, his objection with respect to his contention that he could.not get a presentence report if found guilty by a jury.
MR. RYDER: That’s correct, sir.
THE COURT: Have a seat, please, Mr. Knight. Mr. Knight, you have pled guilty, and you say under protest, but I’m going to ask you some questions with respect to your guilty part of your plea. By your plea of guilty you do admit to me that you did on February 8, 1976, in the daytime, break into the home of M. E. Mason in Henrico County, with the intent to commit larceny, is that correct, sir?
DEFENDANT: I’m admitting it for B & E, but I did not do it.
THE COURT: It’s inconsistent to say you admit you did it, but you didn’t do it, Mr. Knight.
DEFENDANT: I did not break in that house.
THE COURT: The record will note that Mr. Knight is consulting with his attorney. Mr. Knight, I will accept your plea of guilty, that you admit — if you understand what you are charged with — breaking and entering in the daytime the home of M. E. Mason in Henrico County, with the intent to commit larceny. That’s what you have pled guilty to. I take it by your plea that you are guilty in fact of that charge.
DEFENDANT: I didn’t break in the house.
THE COURT: Second count was you pled guilty to stealing some Civil War guns, etc., belonging to Mr. Mason, having a value of more than $100, on February 8, 1976. By your plea of guilty you admit to me you did that. Is that correct, sir?
THE DEFENDANT: I didn’t steal them. They were just brought in my possession and I sold them.
THE COURT: Mr. Knight, I don’t know what your position is, but you’ve pled guilty. You’ve pled guilty under some protest, which to me is not a basic reason for — a substantial reason or justifiable reason for pleading guilty, if you did not in fact commit the offense.
*1319 DEFENDANT: I wouldn’t get a fair trial by jury.
THE COURT: All right, Mr. Knight, you’re sitting there with your attorney, Mr. Ryder, who has been retained by you. You’ve pled guilty to these two counts in this indictment. Now your plea of güilty, based upon the reasons that you say are under protest, etc., which do not relate to the merits of the case, but some other extraneous matter, I read, I understand your plea of guilty that you admit that you did do the things alleged in these two counts, that is on February 8, ’76 you did break and enter the home of Mr. Mason with the intent to commit larceny, on February 8th did steal some Civil War items from Mr. Mason’s home, in the value of more than $100. I understand that to follow from your plea of guilty. Based upon your plea of guilty, this Court has nothing but for one thing to do and that is to determine what the appropriate disposition is. Each one can take, I believe, 20 years in the State Penitentiary. Do you understand that?
DEFENDANT: Yes, sir.
THE COURT: Do you understand further you have no right to appeal what this Court does, so far as I do it within the • statutory range, subject to the objections Mr. Ryder has already made on your point.
DEFENDANT: I intend to appeal the case.
THE COURT: I want you to be sure and to understand, Mr. Knight, that the only basis for appeal you’d have would be one with respect to the motion which we discussed here last Thursday, relating to the other charge pending against you in the District of Columbia. And two, the contention your attorney has made this morning with respect to the — your desire to waive your right to trial by jury and the Commonwealth’s asking for a jury trial, and the point Mr. Ryder suggested with respect to the presentence report. Those would be the only bases upon which this Court can see having any possibility of going to appeal. Do you understand that?
DEFENDANT: Yes, I understand what you say.
THE COURT: The Court is going to accept the pleas of guilty in these two cases. I’m going to hear the evidence fully, and of course, I will after hearing all the evidence, and on píeas of guilty I will get a presentence report and will dispose of the case on that basis. The Court will also note for the record that the defendant has consulted with his attorney constantly during the proceedings here on this colloquy with respect to his plea. He’s been advised by the Court what the Court understands a plea of guilty to mean. He has been advised by the Court the effect of his plea of guilty. He’s also advised the Court that he intends to appeal. The Court has advised him of its judgment. The only things which he can appeal will not relate to the issue of his guilt or his innocence, for his plea of guilty is an admission on record, and he did the things alleged in the indictment.
MR. BRADENHAM: I have a comment to make. I ask the Court to accept two pleas of not guilty and try this man by jury today. I think that’s — they’re trying to skirt the statute, trying to make a mockery of this Court here today — I am—
MR. RYDER: Judge, I object to the Commonwealth’s Attorney’s comments. I think they are ill tempered and uncalled for.
MR. BRADENHAM: And the fact that he makes a guilty plea with some reservations, there’s no provision in the code, in the statutes or the rules of evidence in the State of Virginia. He’s pleading guilty because he didn’t think he can get a fair trial by jury. These people are chosen from Henrico County to come in here and give this man a fair trial, and the Commonwealth as a seeker of justice has asked for a jury in this case. And I ask the Court to take two pleas of not guilty and impanel the jury.
THE COURT: Mr. Bradenham, I’m going to deny your motion and I’m going to do it on this basis. Had I known fully *1320 in advance what the position of the defendant would be, my attitude might have been a little bit differently. But the defendant in this case, after the jury was in the Courtroom, made this plea of guilty, ’though under protest. With that, I don’t think there’s any way in the world I could impanel him for this same jury on pleas of not guilty and expect him to get a fair trial. He has objected to the — he’s made comments of the plea of guilty as based upon his failure — he couldn’t get a fair trial, and he’s indicated something — contention as a defense he might have. The Court is of the view that to try this case on a plea of not guilty, and therefore, this jury would not allow the defendant to get a fair trial, and to do anything but try it on a plea of guilty which he has made would in fact make a mockery of the system. Any time the defendant comes down to try a case they’ll get up and plead guilty under protest for the jury and then we could not dispose of the case.
MR. BRADENHAM: You know, I would like to state for the record before we got into this I asked the jury to be excluded before we got into this problem.
THE COURT: But when he’s arraigned the jury doesn’t have to be here, but he is here under our system, Mr. Bradenham.
MR. BRADENHAM: I just hate to see in the beginning of a trial someone setting up a habeas corpus plea to some Federal Court on some irregularity that happened in a state proceeding. The Commonwealth does not have a right to appeal under our system, and I’d note strongly for the record I object to this. The Commonwealth is prepared to try the case today. We have the evidence here and we’re ready to try.
THE COURT: Mr. Bradenham, I’m going to overrule your motion. It is my view that the — what the defendant has done this morning in the presence of the jury is a calculated play; one, to avoid being tried by this particular jury today, and I’m not going to have it tried by a jury which has heard him plead guilty already and so that’s the end of that. However, he’s also attempted to tell the Court in response to my question that he didn’t do this and didn’t do that. I told Mr. Knight that I accept his plea of guilty only on the condition that I understand that he did do the things alleged in the two counts of the indictment, which have been read to him, which I have explained to him. And I accept the plea of guilty on that basis. All right, now, so for the jurors who are present here are concerned, the Court will note there was no — the record will note the defendant made no response to the Court’s last comment. As for the jurors who are present at this time, you will not be needed here today. Thank you very much for your attendance. You’re excused. We’ll be in touch with you in the customary fashion in the future. Thank you very much. I’m sorry we inconvenienced this date.
(Jury excused)

. Transcript A refers to the pretrial motion transcript of 31 May 1977; Transcript B refers to the trial transcript of 2 June 1977; Transcript C refers to the habeas hearing transcript, of 11 September 1979.

. See Appendix A (Transcript of colloquy relating to entry of plea).

. Apparently under the procedures of this court the jury is present upon arraignment of a defendant. (See Tr. B, p. 22).

. There is no direct testimony from Knight as to how often Ryder spoke with him about the case. However, from Knight’s comments one may infer that they spoke on more than one occasion.

. Ryder made no mention of his argument at the pretrial hearing on this point.

. In Townsend v. Sain, supra, the Supreme Court explained:
By “issue of fact” we mean to refer to what are termed basic, primary, or historical facts; facts “in the sense of a recital of external events and the credibility of their narrators. .. . ” So-called mixed questions of fact and law, which require the application of a legal standard to the historical fact determinations, are not facts in this sense.
Id. 372 U.S. at 309, n. 6, 83 S.Ct. at 755, n.6.

. A court may accept a guilty plea despite an accused’s protestations of innocence where it is clear that the plea is knowing and voluntary and where the purpose behind the plea is to secure a more lenient sentence or some other better deal. See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

. Section 19.2-257 provides:
Upon a plea of guilty in a felony case, tendered in person by the accused after being advised by counsel, the court shall hear and determine the case without the intervention of a jury; or if the accused plead not guilty, with his consent after being advised by counsel and the concurrence of the attorney for the Commonwealth and of the court entered of record, the court shall hear and determine the case without the intervention of a jury. In such cases the court shall have and exercise all the powers, privileges and duties given to juries by any statute relating to crimes and punishments.

. See also Smyth v. Morrison, 200 Va. 728, 107 S.E.2d 430 (1959); Hobson v. Youell, 177 Va. 906, 15 S.E.2d 76 (1941).

. The language of Section 19.2-257 is essentially the same as its statutory predecessors. Compare Va.Code § 19.2-257 (Repl.Vol. 1975) with § 19.1-192 (Repl.Vol. 1960) (repealed) and § 19-166 (1950) (repealed) and § 4900 (1942 and Cum.Supp.1948) (repealed).

. Although much of the Hobson opinion addresses the predecessor of Section 19.2-288 of the Virginia Code, relating to homicide pleas, the statements referred to in the text were made in a general context and, as they have been referred to and approved in subsequent cases, they are applicable here. See Kibert v. Commonwealth, supra.

. See notes 10 and 11, supra.

. At first glance one might be hard pressed to see how Knight can complain he was prejudiced by such a turn of events. One might understandably believe that having the court independently determine the merits, notwithstanding the guilty plea, would benefit rather than harm the accused. But, as developed in the text, such a view may not reflect the true situation. Counsel may approach a trial on the merits, where all issues and procedural aspects are untainted, with an attitude and strategy at considerable variance with his approach to an evidentiary hearing to establish mitigating factors to a previously entered guilty plea. Ryder indicated such to be the situation in the instant case. Moreover, as is more fully developed in the discussion of Harlow v. Murray, 443 F.Supp. 1327 (W.D.Va.), aff'd, 588 F.2d 1348 (4th Cir. 1978), below, that hidden information may appear to be beneficial rather than harmful to the accused is of no moment when the accused is unaware that there is even a choice to be made.

. It is noteworthy that the Virginia Code provides clear instructions on how a trial court should proceed in a situation such as the one presented to the trial court in this instance. Section 19.2-259 of the Virginia Code provides that upon arraignment, if the accused does not plead or answer or confess his guilt, the court shall enter a plea of not guilty on behalf of the defendant and the trial shall proceed accordingly. Va.Code § 19.2-259 (Repl.Vol. 1975).

. Ryder did testify at the State habeas hearing that he had planned to contest the Common *1317 wealth’s case on legal grounds only, but he also stated that if he had thought the trial were proceeding as if on a plea of not guilty he would have cross-examined the witnesses more forcefully than the minimal effort he did make. His failure to put on any defense evidence also might have been altered had he known that the court was conducting a trial on the merits. Ryder’s failure here, of course, was not of his own doing. He, like the prosecutor, was unaware that the court was proceeding with a trial on the merits. Ryder reasonably believed that the court was proceeding with a hearing to aid in sentencing Knight. The court had twice indicated that it was going to conduct a hearing to help with “disposal” of the case and had stated it would proceed to sentence on the basis of evidence to be presented, the “guilty” pleas, and a presentence report. This procedure was reaffirmed upon a question from the prosecutor. (Tr. B, pp. 19, 24-25).